J-S81002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.F.B., L.W.B., JR., T.E.M.B. AND T.L.B., MINOR CHILDREN | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.H., MOTHER | : : : : : | |
| | : | No. 3572 EDA 2015 |

Appeal from the Decrees entered October 19, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  51-FN-379078-2009,
CP-51-AP-0000424-2012, CP-51-AP-0000425-2012, CP-51-AP-0000426-
2012, CP-51-AP-0000427-2012, CP-51-DP-0000012-2011, CP-51-DP-
0000013-2011, CP-51-DP-0000014-2011, CP-51-DP-0000015-2011

BEFORE:  BOWES, MOULTON, JJ., and STEVENS, P.J.E.*

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 22, 2016**

T.H. ("Mother") appeals from the decrees involuntarily terminating her parental rights to her four children pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1]  We affirm.

Mother and Father were never married, but resided together with the children during the relevant periods.  L.F.B. was born during July 2007.  Her twin brothers, L.W.B., Jr., and T.L.B., were born one year later. Mother gave

_____

* Former Justice specially assigned to the Superior Court.

[1] On the same date, the trial court involuntarily terminated the parental rights of L.B. ("Father") to the four children.  We affirmed that order terminating parental rights.  *Interest of L.F.B.*, 3576 EDA 2015 (filed November 2, 2016).

birth to T.E.M.B. during September 2010, immediately after the Philadelphia Department of Human Services ("DHS") became involved with the family.

During August 2010, DHS received allegations that Mother's residence was unfit, cluttered, and infested with bed bugs, and it subsequently transitioned the family to a shelter. On January 3, 2011, DHS received a General Protective Services ("GPS") report that the shelter had evicted Father due to his aggressive behavior toward the staff members. The GPS report also stated that the children lacked appropriate parenting and supervision under Mother's sole care due to her limited cognitive capabilities, her epileptic condition, and the drowsiness caused by her seizure medication. On January 4, 2011, DHS visited the shelter, where they observed that Mother was drowsy and overwhelmed with caring for the children. DHS also observed that the children were malodorous and inappropriately dressed for winter. That same day, DHS obtained an Order of Protective Custody ("OPC") for the four children and placed them in what is now their pre-adoptive foster home.

On January 13, 2011, the trial court adjudicated L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. dependent and committed them into the custody of DHS. On February 3, 2011, DHS established a Family Service Plan ("FSP"), which set the goal of reunification with L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. Mother's FSP goals were to: (1) learn and instill expected age-appropriate behavior in the children; (2) set appropriate expectations for the

children; (3) participate in a mental health evaluation; (4) comply with all treatment recommendations, therapy and/or medications; (5) sign authorization forms; (6) maintain regular contact and visitation with L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B.; (7) attend parent counseling; (8) participate in referrals from Achieving Reunification Center ("ARC"); (9) submit to a neurological evaluation; and (10) comply with the recommended treatments.

Several permanency review hearings were held between 2011 through 2014. Mother's compliance with the FSP was mixed, but her progress toward reunification with the children was deficient. On May 24, 2012, DHS revised the FSP goal to adoption, and three months later, it filed petitions to involuntarily terminate her parental rights. The trial court denied the petitions without prejudice, and we affirmed, holding that there was not clear and convincing evidence that termination was in the children's best interest. *See In Re L.B.*, 93 A.3d 514 (Pa.Super. 2013) (unpublished memorandum filed December 19, 2013).

The dependency proceedings continued with little progress. On October 20, 2014, DHS filed fresh petitions to involuntarily terminate Mother's parental rights. As it relates to Mother's first issue leveled on appeal, we briefly summarize the procedural history, which advanced in fits and starts over the ensuring year. On October 21, 2014, DHS sent the notice of the termination hearing and a copy of the petition to the parties at

their last known address. The notice informed the parties that the termination hearing was scheduled for November 18, 2014. At that hearing, Mother and Father appeared with their respective counsel, but the matter was continued to February 3, 2015. On February 3, 2015, Mother failed to attend the hearing, but her attorney, Neil M. Krum, Esquire, appeared on her behalf. The trial court took testimony after determining that Mother received proper notice. The trial court continued the matter to March 17, 2015 and April 28, 2015. Mother neglected to attend either proceeding but Attorney Krum, again, appeared on her behalf. On May 18, 2015, the case was transferred to a different trial court. Once more, Attorney Krum appeared for Mother when the court entered an order rescheduling the matter to October 19, 2015.

On October 19, 2015, the trial court held a hearing *de novo* on the petition to terminate Mother's parental rights. Again, she failed to appear. Attorney Krum objected that Mother was not properly served with notice of the instant termination hearing. After determining that all parties received proper notice of the hearing, the trial court proceeded without Mother. DHS presented the testimony of Tamisha Richardson, an ongoing caseworker at DHS, and Trina Anderson, the clinical case manager that supervised

visitations. Following the hearing, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[2]

On November 18, 2015, Mother filed a single notice of appeal from the four separate decrees terminating her parental rights to each child, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3] Mother raises the following issues.

1. Did the court below err in ruling that Appellant/Mother, T.H., had been properly served, as required by statutes and court rules, and in denying Due Process to Appellant T.H., Mother, as guaranteed by the Constitutions of the United States and of the Commonwealth of Pennsylvania?

2. Did the court below err in finding that the Department of Human Services (hereinafter, "DHS") had met its burden in proving grounds under 23 Pa.C.S. § 2511(a)(1), (2), (5) and (8), by "clear and convincing evidence"?

_____

[2] We note that the certified record for these cases was originally due in this Court by December 17, 2015. However, due to various circumstances, this Court did not receive the certified record until April 5, 2016. As a result, the briefing schedule for these cases was delayed by over four and a half months. In addition, while Mother received two extensions of time to file her brief, she filed it late nevertheless. DHS and the guardian *ad litem* also received short extensions of time to file their respective briefs, thus causing further delay.

[3] Although Mother has filed one appeal from four separate decrees, we decline to quash her appeal. **Compare Commonwealth v. C.M.K. v. M.W.K.**, 932 A.2d 111 (Pa.Super. 2007) (appeal quashed where co-defendants were required to file separate notices of appeal and could not file one appeal for multiple separate sentences) and **General Electric Credit Corp. v. Aetna Casualty & Surety Co**, 263 A.2d 448 (Pa.Super. 1970) (one appeal from several judgments is discouraged).

3. Did the court below err in finding that DHS had met its burden to prove that termination would be in the child's best interests, under §2511(b)?

Mother's brief at 4.

In reviewing an appeal from the termination of parental rights, we review the appeal in accordance with the following standard.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d [567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, __ Pa. __, 34 A.3d 1, 51 (2011); *Christianson v. Ely*, 575 Pa. 647, 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064, 1066 (1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009).

Moreover, we have explained that:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id*. (*quoting* *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa.Super. 2003)).

In her first question for review, Mother argues that the trial court erred in finding that she was properly served with notice of the October 19, 2015 termination hearing when there was no evidence that she was given actual or constructive notice of the hearing or that DHS made a "good faith effort" to provide her with notice. Mother's brief at 10-11. Mother points out that, since she was absent from the prior hearing on May 18, 2015, she did not receive actual notice that the matter was continued to October 19, 2015. *Id*. at 8. Mother submits that, even though Attorney Krum was present, he was not required to serve her notice or contact her because it is the burden of DHS to effectuate service. *Id*. at 16-17. Because service was not properly made, Mother claims she was denied the opportunity to testify on her own behalf, cross-examine witnesses and assist counsel in the preparation of the case. *Id*. at 18. Mother thus contends that the trial court

deprived her of her guarantee to due process of law under the Fourteenth Amendment to the United States Constitution. *Id*. at 20.

Mother's claim implicates her guarantee of due process of law under the Fourteenth Amendment to the United States Constitution. "Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *In re J.N.F.*, 887 A.2d 775, 781 (Pa.Super. 2005). It is well-settled that termination of parental rights implicates a natural parent's Fourteenth Amendment right to due process. *See In the Interest of A.P.*, 692 A.2d 240, 242 (Pa.Super. 1997) (stating that natural parents have a "fundamental liberty interest . . . in the care, custody, and management of their children") (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599, 606 (1982)). An individual whose parental rights are to be terminated must be given due process of law, as the termination of parental rights is a constitutionally-protected action. *See In re Interest of K.B.*, 763 A.2d 436, 439 (Pa.Super. 2000) (citing *Santosky*, *supra*). DHS bears the burden to prove proper service by its affirmative act. *In re Interest of K.B.*, 763 A.2d at 439 (citing *Leight v. Lefkowitz*, 615 A.2d 751, 753 (Pa.Super. 1992)).

To be clear, notwithstanding Mother's protestations to the contrary, this case does not implicate the service provisions outlined in 23 Pa.C.S. §

2513,[4] which provides that at least ten days' notice shall be given to the

parents, by personal service or registered mail, to their last known address,

_____

[4] Section 2513(b) of the Adoption Act provides, in pertinent part:

> (b) NOTICE.-- At least ten days' notice shall be given to the parent or parents, putative father, or parent of a minor parent whose rights are to be terminated, by personal service or by registered mail to his or their last known address or by such other means as the court may require.  A copy of the notice shall be given in the same manner to the other parent, putative father or parent or guardian of a minor parent whose rights are to be terminated. . . .  The notice shall state the following:
>
> > "A petition has been filed asking the court to put an end to all rights you have to your child (insert name of child).  The court has set a hearing to consider ending your rights to your child.  That hearing will be held in (insert place, giving reference to exact room and building number or designation) on (insert date) at (insert time).  You are warned that even if you fail to appear at the scheduled hearing, the hearing will go on without you and your rights to your child may be ended by the court without your being present.  You have a right to be represented at the hearing by a lawyer.  You should take this paper to your lawyer at once.  If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.
> >
> > > (Name)_____
> > > (Address) _____
> > > (Telephone number)_____"

23 Pa.C.S. § 2513(b).

Instantly, DHS filed petitions to involuntarily terminate Mother's parental rights on October 20, 2014, and served all parties with notice of the termination hearing and a copy of the termination petition at their last known address on October 21, 2014, or twenty-eights days prior to the November 8, 2014 termination hearing.  Thus, Mother was served notice of

*(Footnote Continued Next Page)*

or by such other means as the court may require. Further, the section provides that the notice shall state certain language, including the right to representation and how to obtain counsel if the parents cannot afford counsel. Additionally, the statutory language requires a warning that, upon failure to appear, the hearing will go on without the parent, and the parent's rights to the child in question may be terminated by the court without the parent's presence at the hearing. ***See*** 23 Pa.C.S. § 2513(b).

Mother does not allege that DHS failed to serve the petition pursuant to § 2513(b) or assert that the agency neglected to inform her of any of the concomitant rights and warnings. Instead, she seeks to invoke the statutory provision concerning the threshold service of process as support for her argument that **DHS** was required to issue notice of the May 2016 order that continued the hearing date to October 19, 2015. She is mistaken.

As it relates to the notice of the rescheduled hearing, which is the crux of Mother's actual complaint, the prothonotary of the family court, juvenile division, rather than DHS was required to issue notice of the trial court's scheduling order. ***See*** Pa.R.C.P. 236(a)(2) (prothonotary shall give notice of order or to represented party's attorney); ***see also*** Rule 236 Note (except in circumstances unrelated to this case, "Rule 236 does not prescribe a particular method of giving notice."). While Mother attempts to force the

*(Footnote Continued)* _____

the petition pursuant to 23 Pa.C.S. § 2513(b) well beyond the ten days required by the statute.

application of § 2513(b) and related case law on the current procedural posture, those principles are inapposite.

Herein, the trial court overruled Attorney Krum's objection that notice was not provided pursuant to § 2513(b), concluding that notice was issued to all parties in the May 2015 order continuing the matter to October 19, 2015. N.T., 10/19/15, at 8. The order included in the certified record verifies that Attorney Krum received actual notice of the continued hearing date as he was present when the trial court issued the continuance order. While counsel has accurately complained that it was not his duty to serve Mother notice under § 2513, that is not the issue in the case at bar. As noted, Mother does not challenge the fact that DHS perfected service of the petition on October 21, 2014. Her complaint relates solely to whether DHS provided notice of the rescheduled hearing. However, observing that the DHS does not bear the burden of issuing notice of a court order and recognizing that Attorney Krum received notice of the rescheduled hearing date, we reject Mother's argument.

Based on our review of the record, we discern no abuse of discretion in the trial court's conclusion that Mother was provided notice of the rescheduled termination hearing. As the evidence of record supports the trial court's findings regarding the notice, we will not disturb it on appeal. *In re Adoption of S.P.*, 47 A.3d at 826-27 (stating an appellate court must defer to the trial judges as long as the factual findings are supported by the

record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion).

Additionally, we find no violation of due process in the trial court proceeding in the absence of Mother, with Attorney Krum actively representing her by objecting and conducting cross-examination of the two DHS witnesses, Tamisha Richardson and Trina Anderson. Accordingly, we find no merit to the argument regarding the denial of the due process guarantee of Mother by the trial court proceeding at the hearing.

Next we address whether the trial court abused its discretion by terminating Mother's parental rights. This Court need only agree with any one subsection of § 2511(a), along with § 2511(b), in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). In terminating Mother's parental rights, the trial court relied upon § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. Here, we conclude that the certified record supports the trial court's decision to terminate under § 2511(a)(2) and (b), which provides as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the

- 12 -

> incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

To terminate parental rights pursuant to § 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. ***See In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa.Super. 2003). Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. ***In re A.L.D.*** 797 A.2d 326, 340 (Pa.Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. ***Id.***

- 13 -

With respect to § 2511(b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010).

In her second issue on appeal, Mother claims that DHS did not prove by clear and convincing evidence that her conduct satisfies the statutory ground for termination delineated in § 2511(a). Mother's brief at 20. Accordingly, Mother argues that the trial court did not have a basis to find that there existed a settled purpose of relinquishing her parental claim to L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B., or her refusal or failure to perform parental duties on their behalf. *Id*. at 21. We disagree.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights to L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. pursuant to § 2511(a)(2). During the termination hearing, Tamisha Richardson

- 14 -

provided the trial court with the history of the case concerning the removal of L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B., and the circumstances leading to their placement in foster care, where they currently remain. Ms. Richardson informed the trial court that Mother is intellectually disabled and suffers from seizures. N.T., 10/19/15, at 82. Ms. Richardson listed Mother's FSP objectives, which included visiting L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B., attending parenting classes, stabilizing her mental and physical health, and obtaining housing. *Id*. Ms. Richardson noted the housing objective was mainly Father's responsibility. *Id*.

Ms. Richardson testified that Mother refused mental health therapy, stating she did not need it. *Id*. at 84. Ms. Richardson stated that Mother was to receive an evaluation from Northeast Community Health, but because she was not consistent with therapy, an evaluation could not be set up for a referral to be made. *Id*. at 96. Ms. Richardson informed the trial court that Mother was recently placed in the psychiatric ward at Hahnemann Hospital after being diagnosed with depression on or about October 1, 2015. *Id*. at 85. When Ms. Richardson contacted the hospital on October 16, 2015, a staff member informed her that Mother was not there. *Id*. Ms. Richardson further testified that Mother completed parenting education at ARC, but she did not achieve the skills necessary to parent L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. *Id*. at 83, 163. She explained that Mother was moderately compliant with her bi-weekly, supervised visits at Deveraux Foundation until

March 17, 2015, when she stopped visiting or contacting the children. *Id*. at 86-87. Ms. Richardson concluded that Mother has not complied with all of her FSP objectives and has not remedied the conditions that placed L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. in foster care. *Id*. at 87.

Ms. Richardson further testified that L.F.B. and L.W.B., Jr. are both autistic and have special needs, but L.F.B.'s autism is more severe and requires a higher degree of monitoring by his caregiver. *Id*. at 68-70. She further stated that T.L.B. and T.E.M.B. are neurotypical. *Id*. at 79. Ms. Richardson indicated that Mother did not adequately address the children's developmental needs prior to their placement into foster care. *Id*. at 25; 90. Coming into placement, T.L.B. and T.E.M.B. were initially diagnosed as developmentally delayed, but are currently back on target. *Id*. at 81. Likewise, Ms. Richardson stated that she has seen a 180 degree difference in all four children since they have been in foster care. *Id*. at 89. Ms. Richardson further opined that L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. need a caregiver capable of providing emotional support, patience, guidance, nurture, and adequate supervision. *Id*. at 74; 93. Regarding Mother's parenting skills, Ms. Richardson testified that Mother is childlike and needs to be prompted, pushed or redirected, such as having to be told to change T.E.M.B.'s diaper. *Id*. at 87. Ms. Richardson opined that Mother would place L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. at risk and jeopardize their safety if someone was not there to assist her. *Id*. at 84. Ms. Richardson ultimately

opined that Mother does not have the capacity or ability to parent L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. *Id*.

Trina Anderson testified that she has continuously been involved with this case since January 2011. *Id*. at 176-177. Ms. Anderson stated that she supervised the visits between Mother and the children. Ms. Anderson opined that it is very difficult to manage L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B., who have disabilities and require a high level of care. *Id*. at 278. Ms. Anderson described Mother's interaction with the children as passive. *Id*. at 180. She testified that during visitations, Mother would not try to stimulate, interact or converse with the children unless directed by Father. *Id*. Ms. Anderson characterized Mother as more of a bystander, sitting in a corner and holding T.E.M.B. throughout the majority of visits. *Id*. at 179.

Based upon the testimony of both Ms. Richardson and Ms. Anderson, the trial court found clear and convincing evidence to terminate Mother's parental rights pursuant to § 2511(a)(2). Trial Court Opinion, 3/31/16, at 18. The trial court noted that L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. have been away from Mother's care since January 2011, when DHS placed them in foster care due to her inability to care for them at the shelter by herself. *Id*. at 20. The trial court further determined that the evidence established Mother's non-compliance with her FSP goals regarding mental health and developing the skills necessary to parent L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. *Id*. at 19. Based on the evidence, the trial court found Mother

would not be in the position to parent these children, who have challenging needs and require a higher level of care. *Id*. at 19, 23. As such, the trial court held that Mother failed to remedy the issues that brought L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. into foster care and could not remedy those issues going forward. *Id*. It concluded that terminating Mother's parental rights would be in the best interest of L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. *Id*.

Based on the foregoing testimonial evidence, we discern no abuse of discretion by the trial court in terminating Mother's parental rights pursuant to § 2511(a) (2). With respect to § 2511(a)(2), the evidence demonstrates both an incapacity and a refusal to parent because of Mother's failure to consistently address her mental health needs and to make sufficient progress with her mental health, which has caused L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B., for a period of about five years at the time of the subject proceedings, to be without essential parental care, control, or subsistence necessary for their physical or mental well-being. Mother, who is intellectually disabled, requires treatment to stabilize her mental health. Although Mother maintained consistent contact with L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. by attending her bi-weekly visitations, she did little else to ensure that she was able to provide for their physical, emotional, and developmental needs. L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B., who have special needs, and require a caregiver capable of providing a higher level of

care, support, and supervision. As such, L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. need more than just visits where Mother passively interacts with them. Mother's unwillingness to stabilize her mental health poses grave harm to their well-being and safety, thereby demonstrating her failure to perform parental duties on behalf of L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. Further, the evidence demonstrates that the causes of Mother's incapacity, abuse, neglect, or refusal cannot or will not be remedied. Hence, we find that the competent evidence in the record supports the trial court's decision, and, thus, the trial court did not abuse its discretion in terminating Mother's parental rights. *In re Adoption of S.P.*, *supra* at 826-27.

Having determined that the requirements of § 2511(a) are satisfied, we proceed to review the trial court's needs-and-welfare analysis under § 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa.Super. 2008) (*en banc*).

In reviewing the evidence in support of termination under § 2511(b), our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the

- 19 -

effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (2013).

Here, Mother argues that DHS did not prove by clear and convincing evidence that termination was warranted under § 2511(b). Mother's brief at 23. Mother specifically contends that the trial court did not consider the needs and welfare of L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. and the effect of severing a parent-child bond as required under § 2511(b). *Id*. at 22. Mother further claims that the trial court erred by finding termination of her parental rights best serves L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. *Id*. at 21. Mother's argument lacks merit.

With regard to § 2511(b), Ms. Richardson testified that it would be in the children's best interest to terminate Mother's parental rights. N.T., 10/19/15, at 89. Ms. Richardson testified that a healthy parental bond does not exist between Mother and any of the children. *Id*. at 92. Mother has not provided any care over the past five years since the children were placed in foster care, and she is incapable of caring for the children at this juncture. *Id*. at 103-04, 105-06. Rather than viewing Mother as a caregiver, the children look to their foster parents to provide for their daily needs. *Id*. at 103. Ms. Richardson testified that the pre-adoptive foster parents take them to school and to all of their appointments. *Id*. at 154. The children have thrived in foster care. As noted, *supra*, there has been a 180-degree improvement since the children have been removed from Mother's care. *Id*.

at 89.  Likewise, Ms. Anderson testified that L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. each have great interactions with their foster parents, call their foster parents "Mom" and "Dad," and have developed a bond with their foster parents after approximately five years of living with them.  *Id*. at 195-198.  Ms. Anderson stated that if any bond existed between Mother and L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B., it is not a healthy parent-child bond. *Id*. at 202.  She added that terminating Mother's parental rights would have no effect on L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B., and it would be in their best interest to be adopted.  *Id*. at 199.

Instantly, the trial court found L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. have lived with their foster parents for over five years since leaving the shelter in January 2011, when they were removed from Mother's care.  Trial Court Opinion, 3/31/16, at 21.  The trial court found that based upon the observations of Ms. Richardson and Ms. Anderson, L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. are happy in their foster homes, and look to their foster parents for comfort and fulfillment of their challenging daily needs.  *Id*. at 21-22.  The trial court opined that the evidence was uncontested that L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. would suffer no irreparable harm if Mother's rights were terminated since L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. are in a loving, caring, and competent household in which their foster parents are able to provide for their needs and address the specific needs of L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. going forward.  *Id*. at 23-24.  Thus, the trial

court found under 2511(b) that it would be in the best interest of L.F.B., L.W.B., Jr., T.L.B., and T.E.M.B. if Mother's parental rights were severed. *Id*.

Here, our review of the record indicates that there is clear and convincing, competent evidence to support the trial court's conclusion that the termination of Mother's parental rights serves the children's developmental, emotional, and physical needs and welfare. The evidence also supports the determination that there is no bond between Mother and any of the children that, if severed, would cause a detrimental effect on them. Accordingly, we find that the trial court gave adequate consideration of the developmental, physical, and emotional needs of the children in terminating Mother's parental rights pursuant to § 2511(b), and that the certified record supports the trial court's best interest analysis. Accordingly, we find that the trial court did not abuse its discretion in terminating Mother's parental rights pursuant to § 2511(b).

We affirm the trial court's decrees terminating Mother's parental rights on the basis of § 2511(a) (2), and (b) of the Adoption Act.

Decrees affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2016